WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>            Plaintiff,<br><br>v.<br><br>Reynel Ivan Merlo-Espinal,<br><br>            Defendant. | No. CR-21-01720-001-TUC-CKJ (DTF)<br><br>**REPORT AND RECOMMENDATION** |

  Before the Court is Defendant's Motion to Dismiss the Indictment Because § 1326 Violates Equal Protection Under Arlington Heights. (Doc. 15.) The issue is fully briefed. (Docs. 24, 27.) To the extent Defendant requested a hearing (Doc. 27 at 2), the Court finds a hearing is neither necessary nor warranted and denies the request. This case has been assigned to the undersigned for report and recommendation pursuant to LRCrim 5.1. (Doc. 7.) Magistrate Judge Ferraro recommends the District Court, after its independent review, deny Defendant's motion.

**BACKGROUND**

  According to the Complaint and Indictment, Defendant is a citizen of Honduras and was deported and removed from the United States in 2015. (Docs. 1, 9.) Then in June 2021, agents found Defendant in the United States near Mesa, Arizona. *Id.* He was charged with entering the United States after being deported and removed without obtaining the consent of the Attorney General or the Secretary of the Department of Homeland Security, pursuant to 8 U.S.C. § 1326(a). (Doc. 9.)

**DEFENDANT'S MOTION TO DISMISS**

Defendant moves to dismiss the Indictment. (Doc. 15.) He contends § 1326 violates his Fifth Amendment equal protection rights under *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). *Id.* at 3. He relies on *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020), and *Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246 (2020), to argue "a law's original enactment remains relevant in determining its constitutionality." *Id.* at 18. Hence, he reasons this Court must examine the "uncomfortable past" of the "Undesirable Aliens Act of 1929" (the 1929 Act), albeit "the original illegal reentry law codified in the Undesirable Aliens Act of 1929 has been reenacted several times, most notably in the Immigration and Nationality Act of 1952." *Id.* at 2, 19. He asserts the reenactments did not remove the taint of the 1929 Act. *Id.* at 18. Specifically, he recounts the eugenics movement in the 1920s and many statements from different lawmakers from the 1920s depicting Mexican immigrants as "hordes," "peons," "mongrels," ect. *Id.* at 9-17. He concludes this analysis by stating, "In sum, applying the five *Arlington Heights* factors shows that racism and eugenics were, at minimum, a 'motivating factor' in the passage of the Undesirable Aliens Act." *Id.* at 18.

Defendant provides statistics ranging from 2000 to 2010 to show that Border Patrol apprehends and arrests a disproportionate number of Mexicans or Central Americans. *Id.* at 20. Defendant also points to immigration-related policies and statements from then-Attorney General Jeff Sessions and then-senior policy advisor Steven Miller to argue § 1326 continues to be wielded "as a tool of mass prosecution that disproportionately affects Mexicans and Latin Americans." *Id.* at 21.

**GOVERNMENT'S RESPONSE**

The Government asserts *Arlington Heights* is not the appropriate standard to review § 1326, and instead the Court should only consider if the statute can withstand review under rational basis, which it would easily satisfy. (Doc. 24 at 2, 6-9.) Further, the Government contends Defendant's claim even fails under *Arlington Heights* because he did not show that "the drafters of the initial statute or the drafters of its subsequent amendments were

motivated by racial discrimination." *Id.* at 2, 12-18. The Government traces the roots of § 1326 to 1917, when Congress criminalized attempted or actual reentry for a "limited class of noncitizens deported for immoral acts." *Id.* at 3 (citing *United States v. Corrales-Beltran*, 192 F.3d 1311, 1319 (9th Cir. 1999)). Then the Government argues the 1929 Act provided a general deterrent penalty to reentering noncitizens. *Id.* at 13. The Government also maps some changes and alterations through the decades to § 1326, including substantial alterations. *Id.* at 13-14. It contends any discriminatory intent flowing from the 1929 Act does not "forever taint" subsequent legislation. *Id.* at 14-18. It points out that Defendant did not allege discriminatory intent or motive for any of the amendments following the 1929 Act. *Id.* at 24. The Government also discounts § 1326's disproportionate effect on Mexican and Central Americans as a result of the southern border's proximity. *Id.* at 18-20. Finally, the Government asserts "the non-discriminatory reasons for adopting § 1326 are so compelling that the statute and its amendments would have passed absent any alleged racial considerations." *Id.* at 2-3, 20-23.

**DISCUSSION**

*Standard*

The parties disagree about the appropriate standard, with Defendant employing a heightened standard under *Arlington Heights* and the Government arguing that, because Congress has an "expansive authority" over immigration affairs, the appropriate standard is rational basis. (Doc. 15 at 3; Doc. 24 at 6-7.) The District Court should review under *Arlington Heights* based on the following. The Supreme Court of the United States applied *Arlington Heights* to an equal protection claim challenging the Department of Homeland Security's decision to rescind the Deferred Action for Childhood Arrivals (DACA) program. *Dep't of Homeland Sec. v. Regents of Univ. of the Cal.*, 140 S. Ct. 1891, 1915 (2020). The Ninth Circuit for the United States Court of Appeals also applied *Arlington Heights* when plaintiffs argued the termination of the Temporary Protected Status of their countries violated equal protection. *Ramos v. Wolf*, 975 F.3d 872, 896 (9th Cir. 2020). Finally, the result is the same whether the Court applies *Arlington Heights* or the rational

- 3 -

basis standard.

***Equal Protection Law***

"[T]he Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." *Washington v. Davis*, 426 U.S. 229, 239 (1976). The equal protection analysis is the same under both the Fifth and Fourteenth Amendment. *Buckley v. Valeo*, 424 U.S. 1, 93 (1976).

Plaintiffs can show that a facially neutral government action violates equal protection by proving the government acted with a racially discriminatory purpose and the action has a racially disparate impact. *Arlington Heights*, 429 U.S. at 265-66. Finding discriminatory purpose or motivation requires careful examination. *Id.* at 266. Courts should consider the impact of the action, its historical background, whether there was any departure from the normal process, and the relevant legislative history and contemporaneous statements. *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2349 (2021); *Arlington Heights*, 429 U.S. at 266-68. "Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination forbidden by the Constitution. Standing alone, it does not trigger the rule that racial classifications are to be subjected to the strictest scrutiny and are justifiable only by the weightiest of considerations." *Davis*, 426 U.S. 229, 242 (1976) (citation omitted). The party asserting the statute is unconstitutional bears the burden of proof. *Cf. Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018) (examining claim state law was enacted with discriminatory intent).

Once a challenger proves the government action was motivated in part by a racially discriminatory purpose, the government has the burden to show that the same action would have happened absent the improper discriminatory purpose. *Arlington Heights*, 429 U.S. at 270 n. 21. If the government is successful, then there is no justification for judicial interference. *Id.*

*Arlington Heights Analysis*

This Court is not the first to examine this issue.[1] Two courts in this District have rejected similar, if not identical, claims. *See United States v. Zavala-Sanchez*, No. 2:21-CR-00334-GMS (D. Ariz. Sept. 16, 2021); *United States v. Gutierrez-Barba*, 2:19-CR-01224-DJH, 2021 WL 2138801, at *5 (D. Ariz. May 25, 2021). Only one court has granted a similar motion. *See United States v. Carrillo-Lopez*, 3:20-CR-00026-MMD-WGC, 2021 WL 3667330, at *25 (D. Nev. Aug. 18, 2021).

Defendant argues that according to *Ramos* and *Espinoza* the relevant historical background is the 1920s because the motives of the 1929 Act are imputed to the current § 1326. (Doc. 15 at 18-19.) The Court disagrees.

Neither *Ramos* nor *Espinoza* held that laws should be judged on legislative history or motives of prior statutes enacted decades ago. Neither case considered an equal protection claim. *Espinoza*, 140 S. Ct. at 2263 n.5; *Ramos*, 140 S. Ct. at 1410 (Sotomayor, J., concurring). Additionally, *Ramos* chided *Apodaca* for ignoring the racially discriminatory function the rules were adopted to serve in its cost-benefit analysis considering the changes occurred after the Supreme Court decided *Apodaca*. 140 S. Ct. at 1401 n. 44. Further, the Supreme Court stated unequivocally that "a jurisdiction adopting a nonunanimous jury rule even for benign reasons would still violate the Sixth Amendment." *Id.* Moreover, *Espinoza* noted the "checkered tradition" of no-aid provisions in the context of explaining that they were not an early American tradition and not in line

---

[1] *United States v. Muñoz-De La O*, No. 2:20-CR-134-RMP-1, 2022 WL 508892, at *16 (E.D. Wash. Feb. 18, 2022) (denying motion that § 1326 violates Equal Protection Clause); *United States v. Ponce-Galvan*, No. 21-cr-02227-H-1, 2022 WL 484990, at *3-4 (S.D. Cal. Feb. 16, 2022) (same); *United States v. Hernandez-Lopez*, No. CR H-21-440, 2022 WL 313774, at *6-7 (S.D. Tex. Feb. 2, 2022) (same); *United States v. Sanchez-Feliz*, No. 21-cr-00310-PAB, 2021 WL 6125407, at *8 (D. Colo. Dec. 28, 2021), *reconsideration denied at* 2022 WL 159814, at *2-3 (D. Colo. Jan. 18, 2022) (same); *United States v. Rivera-Sereno*, No. 2:21-cr-129, 2021 WL 5630728, at *5-6 (S.D. Ohio Dec. 1, 2021) (same); *United States v. Samuels-Baldayaquez*, No. 4:20 CR 83, 2021 WL 5166488, at *3-4 (N.D. Ohio Nov. 5, 2021) (same); *United States v. Suqilanda*, 21 CR 263 (VM), 2021 WL 4895956, at 5 (S.D.N.Y. Oct. 20, 2021) (same); *United States v. Novondo-Ceballos*, 21-CR-383 RB, 2021 WL 3570229, at *6 (D.N.M. Aug. 12, 2021) (same); *United States v. Machic-Xiap*, No. 3:19-cr-407-SI, 2021 U.S. Dist. LEXIS 145037, at * 42-43 (D. Org. Aug. 3, 2021) (same); *United States v. Wence*, No. 3:20-cr-0027, 2021 WL 2463567, at *10 (D.V.I. June 16, 2021) (same); *United States v. Zepeda*, No. CR 20-0057 FMO, 2021 U.S. Dist. LEXIS 209853, at *9 (C.D. Cal. Jan. 5, 2021) (same);

with the Establishment Clause. 140 S. Ct. at 2259. Defendant points to Justice Alito's concurrence. (Doc. 15 at 19.) However, Justice Alito also stated, "Regardless of the motivation for this provision or its predecessor, its application here violates the Free Exercise Clause." 140 S. Ct. at 2267 (Alito, J., concurring). These cases do not support Defendant's assertions. Finally, the Supreme Court has stated they have "never suggested that past discrimination flips the evidentiary burden on its head." *Abbott*, 138 S. Ct. at 2325.

The Court recognizes that the 1929 Act is a precursor to both §§ 1325 and 1326. *United States v. Rizo-Rizo*, 16 F.4th 1292, 1298 (9th Cir. 2021) (noting §§ 1325 and 1326's similar legislative history). However, both sections 1325 and 1326 were enacted as a part of the Immigration and Nationality Act of 1952. *See* Pub. L. No. 82-414, §§ 275, 276, 66 Stat. 163, 229; *Rizo-Rizo*, 16 F.4th at 1298. Section 1326 was amended as recently as 1996. 110 Stat. 3009-606, 3009-618 to 3009-602, 3009-629. The history and motivations of the 1929 Act provide little weight in the Court's analysis. *See United States v. Ponce-Galvan*, No. 21-cr-02227-H-1, 2022 WL 484990, at *2 (S.D. Cal. Feb. 16, 2022).

Defendant did not attack the 1952 INA or any subsequent amendments. (Docs. 15, 27.) Thus, the Court is left with little to consider from Defendant once the 1929 Act is given little weight.

Defendant argues § 1326 disproportionately affects Mexicans or Central Americans. (Doc. 15 at 20-21.) To the extent this shows discriminatory intent of the bill, the Government is correct that this is explainable on grounds other than race, such as geography. (Doc. 24 at 18.) Thus, the disparity does not show discriminatory intent. *See Arlington Heights*, 429 U.S. at 266.

Based on the above, the Court does not find that Congress acted with discriminatory intent when enacting § 1326. As such, the motion should be denied.

***Rational Basis Review***

Having found no discriminatory intent, the Court will consider if § 1326 would pass muster under rational basis standard of review. *See United States v. Dumas*, 64 F.3d 1427, 1431 (9th Cir. 1995). Under rational basis, the statute or classification must bear "some

rational relation to a legitimate government interest or purpose." *United States v. Ruiz-Chairez*, 493 F.3d 1089, 1092 (9th Cir. 2007). The Ninth Circuit has explicitly explained that § 1326 has an "immigration-regulation purpose." *United States v. Hernandez-Guerrero*, 147 F.3d 1075, 1078 (9th Cir. 1998). The Ninth Circuit explained that, without § 1326, "Congress's immigration-regulation authority would be fatally undermined—all bark and no bite." *Id.* Thus, this Court recommends finding § 1326 is rationally related to a legitimate governmental interest and denying Defendant's motion to dismiss the Indictment.

**RECOMMENDATION**

Accordingly, this Court recommends, after its independent review of the record, the District Court deny Defendant's motion (Doc. 15) because § 1326 does not violate the Equal Protection Clause under either *Arlington Heights* or rational basis. Pursuant to Federal Rule of Criminal Procedure 59(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of this Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the District Court. If objections are not timely filed, they may be deemed waived.

Dated this 4th day of March, 2022.

Honorable D. Thomas Ferraro
United States Magistrate Judge