WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | )<br>) |
| Plaintiff, | )<br>) |
| vs. | )  No. CR 21-1720-TUC-CKJ (DTF)<br>) |
| Reynel Ivan Merlo-Espinal, | )  **ORDER**<br>) |
| Defendant. | )<br>) |

On March 4, 2022, Magistrate Judge D. Thomas Ferraro issued a Report and Recommendation ("R&R") (Doc. 29) in which he recommended the Motion to Dismiss the Indictment Because § 1326 Violates Equal Protection Under Arlington Heights (Doc. 29) filed by Defendant Reynel Ivan Merlo-Espinal ("Merlo-Espinal") be denied.  Merlo-Espinal has filed an Objection (Doc. 33) and the government has filed a Response (Doc. 36).

The standard of review that is applied to a magistrate judge's report and recommendation is dependent upon whether a party files objections – the Court need not review portions of a report to which a party does not object. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  However, the Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instruction." Fed. R. Civ. P. 72(b)(3); *see also* 288 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

The Court has reviewed the Motion to Dismiss the Indictment Because § 1326

Violates Equal Protection Under Arlington Heights and its exhibits (Doc. 15), the Response (Doc. 24), the Reply (Doc. 27), as well as the R & R (Doc. 29), the Objection (Doc. 33), and the Response (Doc. 36).

I. *Report and Recommendation – Background and Summary of Arguments*

No objection has been filed as to the background or the summary of the parties' arguments, the Court adopts these portions of the R & R.

II. *Arlington Heights Analysis*

The magistrate judge recommends the Court "review under [*Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977).]" R & R (Doc. 29, p. 3).[1] However, the magistrate judge also concluded that the Undesirable Aliens Act of 1929 ("the 1929 Act"), a precursor to 8 U.S.C. §§ 1325 and 1326, and its history and motivations, provides little weight in the analysis of whether §1326 violates equal protection. Indeed, as pointed out by another district court:

> Generally, "the starting point in discerning congressional intent is the existing statutory text, and not the predecessor statutes." *Lamie v. U.S. Tr.*, 540 U.S. 526, 527 (2004) (internal citations omitted). Implicit in this statement is that congressional intent does not necessarily carry over when a statute is amended. This sentiment is consistently observed by the courts. *See United States v. Price*, 361 U.S. 304, 332 (1960) ("[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one."); *United States v. Maxwell*, 386 F.3d 1042, 1065 (11th Cir. 2004), *cert. granted, judgment vacated*, 546 U.S. 801 (2005) ("Findings related to the amendments should be viewed with caution because they do not necessarily reflect Congress's intentions at the time the original statute was enacted.").
>
> In the *Arlington Heights* line of cases, courts also consider the intent of subsequent legislatures. *See, e.g., Abbott v. Perez*, 138 S. Ct. 2305, 2325 (2018) ("[W]e have never suggested that past discrimination flips the evidentiary burden [of the intent test] on its head."); *United States v. Gallegos-Aparicio*, 2020 WL 7318124, at *3 (S.D. Cal. Dec. 11, 2020) ("In some situations, the legislative history of past enactments may be highly probative of the motivations of the legislators who enacted the current law, but the Court cannot automatically impute these past motivations to the current law and forgo analysis of the enacting legislature required by Arlington Heights."); *United States v. Lucas-Hernandez*, 2020 WL 6161150, at *3 (S.D. Cal.

---

[1]No objection has been filed to this recommendation. However, the government argues *Arlington Heights* does not apply in the context of 18 U.S.C. § 1326.

Oct. 21, 2020) (finding that 8 U.S.C. § 1325(a)(1) should not be judged according to legislative history from laws enacted decades before). *United States v. Gutierrez-Barba*, No. CR1901224001PHXDJH, 2021 WL 2138801, at *3–4 (D. Ariz. May 25, 2021).

"The Congressional Record [from the 1920s related to criminalization of illegal entry by aliens] reflects an open hostility to Mexican immigrants based on undeniably racist notions[.]" *United States v. Lazcano-Neria*, No. 3:20-mj-04538-AHG, 2020 WL 6363685, at *6–9 (S.D. Cal. Oct. 29, 2020). However, Merlo-Espinal is charged with entering the United States after being deported and removed without obtaining the consent of the Attorney General or the Secretary of the Department of Homeland Security, pursuant to 8 U.S.C. § 1326(a). This crime was not enacted until the Immigration and Nationality Act of 1952 ("the 1952 Act") and was amended as recently as 1996.

The Supreme Court's recent decisions in *Ramos v. Louisiana*, 590 U.S. ––––, 140 S. Ct. 1390 (2020), and *Espinoza v. Montana Department of Revenue*, 591 U.S. ––––, 140 S. Ct. 2246 (2020), "neither of which involved an equal protection challenge, did not hold that the discriminatory motivations of a previous legislature are determinative of the outcome of an *Arlington Heights* analysis of a law enacted by a subsequent legislature." *United States v. Rios-Montano*, No. 19-CR-2123-GPC, 2020 WL 7226441, at *4 (S.D. Cal. Dec. 8, 2020). The Court finds it appropriate to look to "the intent of Congress in passing the more recent iterations of the Immigration Act rather than the intent of previous Congresses." *United States v. Campos-Atrisco*, No. 19MJ024683KSCBAS1, 2021 WL 5332918, at *4–5 (S.D. Cal. Nov. 16, 2021). Merlo-Espinal has not demonstrated that the legislative history of the more recent enactments reveals any discriminatory motive.[2] This contrasts with stated

---

[2] Indeed, during the legislative process to override a presidential veto for the enactment of the 1952 Act, one congressman stated, "I submit that it is the President's veto that repudiates our basic religious concepts, our belief in the brotherhood of man, because it keeps our statutes as they are, with hundreds of millions of people in those crucial areas still outlawed because of the color or the pigment of their skin . . . We must make clear to watching millions that the representatives of the people of the United States believe in trying

- 3 -

reasons for the more recent legislation. *See e.g.*, *United States v. Wence*, No. 3:20-CR-0027, 2021 WL 2463567, at *8 (D.V.I. June 16, 2021)136 Cong. Rec. 36844 (Oct. 27, 1990), Statement of Congressman Fish (the legislation would bring changes that would "not disturb the basic reasons for which we have always, and will always, exclude aliens: For cases where aliens have criminal records, when they are public health risks, when they violate drug laws, when they are likely to become economic burdens on the country, or when they have previously violated U.S. Immigration laws."). The Court finds the *Arlington Heights* factors *of the applicable statute* do not support a conclusion the government acted with a racially discriminatory purpose.[3]

While a disparate impact showing on its own is typically insufficient to establish an equal protection violation, "an invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the law bears more heavily on one race than another." *Washington v. Davis*, 426 U.S. 229, 239 (1976). Merlo-Espinal has provided information, *see e.g.,* Objection (Doc. 33, pp. 5-6), to show the law has a disparate impact on Mexicans or Hispanics;[4] the government does not dispute this assertion. However, a disparate impact alone, absent other evidence of a discriminatory motive, is

---

to correct things that are inequitable; that we want to improve relations between our country and all the peoples in the world who want to be free[.]" 82 Cong. Rec. 8218 (June 26, 1952); *United States v. Wence*, No. 3:20-CR-0027, 2021 WL 2463567, at *7-8 (D.V.I. June 16, 2021).

[3]Courts are to consider the impact of the action, its historical background, whether there was any departure from the normal process, and the relevant legislative history and contemporaneous statements. *Brnovich v. Democratic Nat'l Comm.*, — U.S. —, 141 S. Ct. 2321, 2349 (2021).

[4]The parties refer to Latinx persons. As a majority of U.S. Hispanics state they prefer the terms Hispanic or Latino, the Court refers to these persons as Hispanics. *See* About One-in-Four U.S. Hispanics Have Heard of Latinx, but Just 3% Use It, https://www.pewresearch.org/hispanic/2020/08/11/about-one-in-four-u-s-hispanics-have-heard-of-latinx-but-just-3-use-it/.

generally not sufficient to state a claim. *Arlington Heights*, 429 U.S. at 266; *see also Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1915-1916 (2020)). Indeed, "[e]ven conscious awareness on the part of the decisionmaker that the policy will have a racially disparate impact does not invalidate an otherwise valid law, so long as that awareness played no causal role" in the adoption of the policy. *Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 552 (3d Cir. 2011), *citations omitted*, *internal brackets omitted*. In fact:

> It is certainly true that immigration policies can be expected to have a disproportionate impact on a particular racial group. But because these policies will often be "plausibly explained on a neutral ground," *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 275 (1979), the intent test requires additional evidence of an invidious motive before finding the law unconstitutional. *See* [*Washington v. Davis*, 426 U.S. 229, 242 (1976)] ("Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination forbidden by the Constitution.")
> . . .

*Wence*, 2021 WL 2463567 at *10. Here, the Court agrees with the magistrate judge that the disproportionate effect "is explainable on grounds other than race, such as geography." R & R (Doc. 29, p. 6); *see also Wence*, 2021 WL 2463567 at *10.

The Court agrees with the magistrate judge, therefore, that analysis under *Arlington Heights* does not show a discriminatory intent. The Court overrules this objection.

III. *Rational Basis Review*

No objection has been made to the magistrate judge's consideration of § 1326 under a rational basis standard. After its independent review, the Court agrees with the magistrate judge's conclusion. The Court, therefore, adopts this portion of the R & R and finds 8 U.S.C. § 1326 is rationally related to a legitimate governmental interest and will deny the Motion to Dismiss.

Accordingly, after an independent review, IT IS ORDERED:

1. The Objection to Report and Recommendation (Doc. 33) is OVERRULED and the Report and Recommendation (Doc. 29) is ADOPTED.

2. The Motion to Dismiss the Indictment Because § 1326 Violates Equal Protection Under Arlington Heights (Doc. 15) is DENIED.

DATED this 16th day of June, 2022.

*Cindy K. Jorgenson*
Cindy K. Jorgenson
United States District Judge